UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

REBECCA MERCER                                                             PLAINTIFF

v.                                                   CIVIL ACTION NO. 3:14-CV-502-H

JEREMY PAUL DEMPSTER et al.                                DEFENDANTS

### MEMORANDUM OPINION

Plaintiff, Rebecca Mercer, filed a *pro se* complaint (DN 1). This matter is before the Court for screening pursuant to 28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Because the Court finds that it lacks jurisdiction over Plaintiff's complaint, the action will be dismissed as set forth below.

**I.**

Plaintiff names as Defendants Jeremy Paul Dempster; Johnnie W. Dempster, II; Nicole M. Dempster; Jeffrey Ryan Dempster; Jennifer Jo Dempster; Fort Knox Rentals; Curtis Brunson; D. Michael Coyle; and Unknown Female Friend of Jeremy Paul Dempster. As grounds for filing this case in federal court, Plaintiff states: "housing discrimination, employment discrimination, fraud in the factum, fraudulent conveyance of real estate, sexual discrimination and [illegible] acts of enslavement & domestic violence and financial abuse." The complaint is lengthy and rambling. It appears that a forcible detainer was entered against Plaintiff by Fort Knox Home Rentals in state court on January 14, 2014. The state court found that Plaintiff had no ownership in the property, and she was given 30 days to vacate the residence. The decision was affirmed on appeal.

The complaint states, in part:

> These parties told [Plaintiff] that she would have to vacate by April 25, 2014. These parties have violently bullied and video taped persons without permission in a very childish manner; similar to that of a spoiled brat . . . the afternoon of April 25th 2014 was a nice afternoon and the law enforcement officers returned the great Jeremy and gold digger Nicole . . . these two continued to threaten me and yell that I had to leave because they wanted to steal my home and not allow me to live where I was paying rent after they and Curtis Brunson fraudulent created an oral lease. This lease was 7 days after the death of their natural father who had only been buried 3 days when they were working to get the money out of all the properties . . . after I did not leave as soon as the spoiled brat thought I should he threw his little tantrum and called 911. The officer who responded was very upset since he was taken off a homicide so Jeremy could intimidate me in to leaving. . . The Dempsters changed the locks while the rent the[y] extorted 7 days after the death of their father was in the Hardin County Clerk's Office in the amount of $3,000.00. . . .due to the fact that they illegally broke into our home; the courts will probably allow them to again financially rape [Plaintiff]. The simple fact is that John Dempster Sr. would never have had the rental property if he had not abused [Plaintiff].

However, much of the complaint contains allegations concerning events occurring before October 1, 2010. In a previous complaint, filed on October 1, 2010, in this Court, *Mercer v. Dempster et al.*, 3:10-CV-625-S, Plaintiff sued John W. Dempster, Sr., John W. Dempster Revocable Living Trust, John W. Dempster, Jeremy Paul Dempster, John W. Dempster, Jr., and Jeffrey Ryan Dempster. Her complaint alleged that John W. Dempster, Sr., and his sons, the "successor trustees," had extorted real estate from her and denied her the right to her home. She asserted, "They have denied me housing based on my sex and age. John W. Dempster, Sr. has rented to others for less money and has lied about my business interest in the Real Estate in Hardin Co., Ky." She further alleged:

> John W. Dempster, Sr., has been my business partner and boyfriend for 12 years. We have purchased Real Estate during this time and

2

> this is where my home was for most of these years at various different locations, depending on where I was working at the time. The Dempsters have denied me the right to my HOME AND BUSINESS. Plus, they have failed to pay me the amounts which I am due and to which I have a right

Because Plaintiff previously has brought suit based on many of the same facts, many of the claims raised in the instant action may be barred by the doctrine of *res judicata*. The doctrine of *res judicata* prohibits a plaintiff from relitigating a claim that was asserted or which could have been asserted in earlier litigation against the same defendants or their privies. *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981); *Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003). The elements of *res judicata* are: "(1) there is a final decision on the merits of the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is identity of claims." *Walker v. Gen. Tel. Co.*, 25 F. App'x 332, 336 (6th Cir. 2001) (citing *Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992)).

However, because the prior case was dismissed for lack of subject-matter jurisdiction and because the instant complaint suffers from the same deficit, the Court will dismiss this case on the ground of lack of subject-matter jurisdiction without considering whether any of the claims are barred by *res judicata*.

## II.

"Because federal courts are courts of limited jurisdiction, the plaintiff must establish subject matter jurisdiction." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 970 (6th Cir. 2005). Federal courts hear only cases allowed under the Constitution or cases which Congress

has entrusted to them by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Plaintiff's complaint cannot be premised on the diversity statute, 28 U.S.C. § 1332(a), as there is not complete diversity of citizenship between the parties. Under the diversity-of-citizenship statute, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states . . . . " 28 U.S.C. § 1332(a)(1). "[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). Plaintiff does not claim that the action exceeds $75,000, and Plaintiff's address and some of Defendants' addresses are in Kentucky. Consequently, Plaintiff cannot bring any state-law claims by way of the federal diversity statute.

Jurisdiction in this Court may be premised on a federal question. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Although the complaint mentions housing, employment, and sexual discrimination, Plaintiff does not allege that she was employed by any of the defendants. She does assert that she was paying rent, but the Hardin Circuit Court Order dated April 17, 2014, regarding the January 2014 forcible detainer found that Plaintiff had no ownership interest in the property in question and that she had never paid any rent.

Instead, Plaintiff's complaint, and the attachments thereto, indicate that she considers herself part-owner of certain properties which are now in dispute. Such a property dispute does not create a federal question for this Court to have jurisdiction over this case. Consequently, jurisdiction in this case cannot be premised on federal-question jurisdiction.

More importantly, this case is barred by the *Rooker-Feldman* doctrine. Under this

4

doctrine, federal courts lack jurisdiction to review a case litigated and decided in state court. *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 & n.16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). The doctrine prevents both a direct attack of the substance of a state-court decision and a challenge to the procedures used by the state court in arriving at its decision. *Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 493 (6th Cir. 2001).

Here, the issues raised in the complaint are inextricably intertwined with the state-court action such that Plaintiff is effectively asking this Court to invalidate the state-court forcible detainer judgment. The *Rooker-Feldman* doctrine is, therefore, directly applicable. Plaintiff is "asking this Court to enter an order that will effectively render the final judgment entered by the state court null and void. Plaintiff's complaint is, therefore, subject to dismissal for lack of subject matter jurisdiction and fails to state a claim upon which relief may be granted." *McCroy v. New York Bank and Trust Co.*, No. 08-12701, 2008 WL 2714116, at *1 (E.D. Mich. July 07, 2008) (dismissing case under § 1915(e) where *pro se* plaintiff sued bank after property foreclosed on in state-court proceeding); *see also Moore v. Deutsche Bank Nat'l*, No. 07-11114, 2007 WL 3053675, at *4-5 (E.D. Mich. Oct. 19, 2007) (finding that dismissal under § 1915(e)(2) warranted based on *Rooker-Feldman* abstention where plaintiff's property sold as a result of a state-court foreclosure action).

## III.

Since Plaintiff has failed to establish this Court's jurisdiction, the instant action must be dismissed. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The Court will enter an Order

5

consistent with this Memorandum Opinion.

Date:


cc: Plaintiff, *pro se*
 Defendants
4412.009